IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-cr-00288 |
| Plaintiff, | |
| -vs- | |
| | JUDGE DAVID A. RUIZ |
| EUGENE S. COLBERT, | |
| | **ORDER** |
| Defendant. | |

Defendant Eugene S. Colbert has moved the Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss the single-count indictment charging him with unlawfully possessing a firearm after a felony conviction in violation of 18 U.S.C. § 922(g)(1) and 924(a)(8). (R. 25). Defendant asserts that the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) renders § 922(g)(1) unconstitutional and in violation of Defendant's Second Amendment right to keep and bear arms. *Id*. The United States filed a response opposing the motion and a notice of supplemental authority. (R. 27, 33). Defendant has not filed a reply in support. For the reasons set forth below, Defendant's motion is denied.

**I. Background**

According to the United States' opposition brief as well as the Indictment, in 2002, Defendant was convicted of four felonies in Ohio state courts, including convictions for involuntary manslaughter and aggravated robbery with firearm specifications. (R. 1; R. 27, PageID#

85). In addition, the United States asserts that Defendant was only granted judicial release in 2020 and placed on 18 months of community control and five years of post-release control. *Id*. Conversely, Defendant asserts that he "has been a law abiding citizen for the last twenty years."[1] (R. 25, PageID# 79-80). The Indictment alleges that on or about August 5, 2022, Defendant

> knowing he had previously been convicted of a crimes punishable by imprisonment for a term exceeding one year, those being: Involuntary Manslaughter and Aggravated Robbery with Firearm Specifications, on or about July 29, 2002, in Case Number CR-01-417823, in the Cuyahoga County Common Pleas Court, knowingly possessed in and affecting interstate commerce a firearm, to wit: a Taurus, Model G2c, 9mm caliber semi-automatic pistol … said firearm having been shipped and transported in interstate commerce, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

(R. 1, PageID# 1).

## II. Legal Standard

The Second Amendment to the United States Constitution provides as follows: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court held, before the *Bruen* decision, that the Second Amendment protects an individual's right to keep and bear arms *without* regard to Militia service. *District of Columbia v. Heller*, 554 U.S. 570, 595-599 (2008).

A recent decision from the Southern District Court of New York sets forth a concise recitation of the Second Amendment decisions since *Heller*, which the Court incorporates:

> [A]t all times, the Supreme Court repeatedly has made clear that the Second Amendment right is "not unlimited." *Heller*, 554 U.S. at 595, 128 S.Ct. 2783; *McDonald* [*v. City of Chicago*], 561 U.S. at 786, 130 S.Ct. 3020 [2010] (noting that "[i]t is important to keep in mind that *Heller*, while striking down a law that prohibited the possession of handguns in the home, recognized that the right to

---

[1] Defendant's assertion rings hollow given that he has spent the bulk of the last twenty years imprisoned for his violent offenses.

2

keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose' ") (*quoting Heller*, 554 U.S. at 626, 128 S.Ct. 2783). Indeed, as the Supreme Court explained in *Heller*, and reconfirmed in *McDonald*, "nothing in [its] opinion should be taken to cast doubt on" well established "presumptively lawful regulatory measures," including "*longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626-27, n.26, 128 S.Ct. 2783 (emphasis added); *McDonald*, 561 U.S. at 786, 130 S.Ct. 3020 ("repeat[ing] those assurances").

In … *Bruen*, the Supreme Court reconfirmed that *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an *ordinary, law-abiding citizen* to possess a handgun in the home for self-defense." ⎯⎯ U.S. ⎯⎯, 142 S. Ct. 2111, 2122, 213 L.Ed.2d 387 (2022) (emphasis added). It then went on to hold that, "*consistent* with *Heller* and *McDonald*, [ ] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self defense outside the home" as well. *Id*. at 2122 (emphasis added). Accordingly, *Bruen* found unconstitutional a New York state licensing regime that required individuals to demonstrate "a special need for self-defense" to obtain a public carry license. *Id*. As the *Bruen* Court explained, the regime violated the individual right "to carry a handgun for self-defense outside the home" protected under the Second Amendment. *Id*.

In so holding, the *Bruen* Court clarified that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2129-30. In this way, *Bruen* put an end to a "'two-step' framework for analyzing Second Amendment challenges" that the Courts of Appeals had instituted in the years following *Heller* and *McDonald*, which had "combine[d] history with means-end scrutiny." *Id*. at 2125.

*United States v. Sternquist*, 2023 WL 6066076, at *1 (E.D.N.Y. Sept. 15, 2023).

The Sixth Circuit Court of Appeals, in *United States v. Greeno*, 679 F.3d 510 (6th Cir. 2012), had also adopted the two-step approach. The Supreme Court's *Bruen* decision held that "[d]espite the popularity of this two-step approach, it is one step too many." 142 S. Ct. at 2127.

"Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*.

## II. Analysis

In light of the Supreme Court's *Bruen* decision, Defendant moves to dismiss the § 922(g)(1) charge on the grounds that it is an unconstitutional restriction because felon-disarmament laws did not appear in the United States until the twentieth century. (R. 25, PageID# 78-79). Defendant also relies on a non-binding decision from the Third Circuit that found that "[t]o be compatible with the Second Amendment, regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue." *Range v. Att'y Gen.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc).

Turning to the now-singular prong of the *Bruen* test, the Court remains mindful that the Second Amendment right to keep and bear arms "is not unlimited." *Heller*, 554 U.S. at 626 ("From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.") The *Heller* decision expressly pointed out that:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id*. at 626–27, 627 n. 26 ("We identify these *presumptively lawful regulatory measures* only as examples; our list does not purport to be exhaustive.") (emphasis added). The Sixth Circuit Court of Appeals, "[r]elying on that language from *Heller* … has held that § 922(g)(1) comports with the Second Amendment, stating that 'prohibitions on felon possession of firearms do not violate the Second Amendment,' and 'Congress's prohibition on felon possession of firearms is

4

constitutional.'" *United States v. Whisnant*, 391 Fed. App'x 426, 430 (6th Cir. 2010) (quoting *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010) (citing *United States v. Frazier*, 314 Fed. App'x 801, 807 (6th Cir. 2008); *United States v. Khami*, 362 Fed. App'x 501, 507-08 (6th Cir. 2010)).

With this background, the Court is unconvinced by Defendant's argument that the Supreme Court's *Bruen* decision intended to silently and implicitly invalidate the extensive line of cases upholding the prohibition against felons possessing firearms. *See, e.g., Sternquist*, 2023 WL 6066076, at *1 ("Had the *Bruen* Court intended to abrogate or overturn *Heller* and/or *McDonald*, it would have done so explicitly.") Rather, the very first paragraph of Justice Thomas's opinion states that:

> In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), and *McDonald v. Chicago*, 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), we recognized that the Second and Fourteenth Amendments protect the right of an <u>ordinary, law-abiding citizen</u> to possess a handgun in the home for self-defense. In this case, petitioners and respondents agree that <u>ordinary, law-abiding citizens</u> have a similar right to carry handguns publicly for their self-defense. We too agree, and now hold, **consistent with** *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.

*Bruen*, 142 S. Ct. at 2122 (emphasis added). Thus, the *Bruen* court, consistent with *Heller* and *McDonald*, when discussing "the people" protected by the Second Amendment, were clearly contemplating *ordinary, law-abiding citizens*. Furthermore, "six of the nine Justices pointed out that *Bruen* was not casting any doubt on this language in *Heller*." *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023) (citing *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring); *id*. at 2162 (Kavanaugh, J, concurring, joined by Roberts, C.J.); *id*. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.)). In light of these statements by a *majority* of the current Supreme

5

Court, as well as the long-standing line of cases that supports prohibitions against felons possessing firearms, this Court agrees with the Eighth Circuit Court of Appeals that "there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)." *United States v. Jackson*, 69 F.4th 495, 502 (8th Cir. 2023).

> In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons.

*Jackson*, 69 F.4th at 505; *see also United States v. Dubois*, No. 22-10829, 2024 WL 927030, at *5 (11th Cir. Mar. 5, 2024). The *Dubois* court expressly rejected a defendant's *Bruen* argument, explaining that "[b]ecause the Supreme Court 'made it clear in *Heller* that [its] holding did not cast doubt' on felon-in-possession prohibitions, *McDonald*, 561 U.S. at 786, 130 S.Ct. 3020 (plurality opinion), and because the Court made it clear in *Bruen* that its holding was '[i]n keeping with *Heller*,' 142 S. Ct. at 2126, *Bruen* could not have clearly abrogated our precedent upholding section 922(g)(1)." As further pointed out by the Eleventh Circuit Court of Appeals, "the *Bruen* majority did not mention felons or section 922(g)(1)." *Dubois*, 2024 WL 927030, at *5.

Likewise, "[t]he vast majority of courts to address the issue, including courts within the Sixth Circuit, have concluded that the ruling in *Bruen* did not 'overturn, re-write, or alter' the Supreme Court's prior determinations that convicted felons properly fell outside the scope of the Second Amendment's protection." *United States v. Norman*, No. 1:21-CR-383, 2023 WL 6290690, at *2 (N.D. Ohio Sept. 27, 2023) (Lioi, J.) (*citing United States v. Haywood*, No. 22-20417, 2023 WL 3669333, at *2–3 (E.D. Mich. May 25, 2023)); *see also United States v. Williams*, 2023 WL 8190690, at *5 (E.D. Mich. Nov. 27, 2023) ("Given the overwhelming weight of binding and

6

persuasive authority, there is 'no reason' for the Court 'to conduct an in-depth analysis' of whether the felon-in-possession statute is consistent with this 'Nation's historical tradition of firearm regulation.'")

The Sixth Circuit Court of Appeals has noted that although it has "not yet revisited this issue following the Supreme Court's decision in … *Bruen*, 142 S. Ct. 2111 (2022), and although there are numerous appeals pending before us that raise the issue, the vast majority of courts to have reconsidered the constitutionality of § 922(g)(1) post-*Bruen* have upheld it. *United States v. Vaughn*, No. 23-5790, 2023 WL 9789018, at *1 (6th Cir. Sept. 28, 2023) (*citing United States v. Gleaves*, No. 3:22-CR-00014, 2023 WL 1791866, at *1 (M.D. Tenn. Feb. 6, 2023) (collecting cases)." The Court of Appeals reiterated that it "unambiguously held in … *Carey*, 602 F.3d 738, 741 (6th Cir. 2010), that felon-in-possession statutes do not violate the Second Amendment, and that remains the binding law in this circuit." This Court remains bound by this precedent until and unless the Court of Appeals or the United States Supreme Court rules otherwise.

Moreover, the Court agrees with the above authority. Further, proceeding for the sake of argument that a historical analogue is necessary to support the constitutionality of § 922(g)(1), the Court finds the United States' brief sets forth numerous historical examples from the founding era, the pre-founding era, and the post-founding era in which the government disarmed individuals who were not peaceable, law-abiding citizens. (R. 27, PageID# 97-114). As *Bruen* itself indicated, "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin." 142 S.Ct. at 2133. Therefore, the Court finds restrictions on the right to carry arms have ample representative historical analogues.

Further, the Court declines Defendant's invitation to follow *Range*, 69 F.4th 96, as it remains inconsistent with the vast majority of courts that have addressed the issue. This Court also views its conclusion, as inconsistent with the Supreme Court's Second Amendment jurisprudence, which has explicitly refrained from casting any doubt on the validity of the prohibitions on the possession of firearms by convicted felons.

Finally, because Colbert is a convicted felon with criminal convictions for involuntary manslaughter and aggravated robbery, he is disqualified from the protections of the Second Amendment. Consequently, Defendant's motion to dismiss the felon-in-possession charge is denied because the Court finds that as applied to Colbert, §922(g)(1) remains valid.

### III. Conclusion

Having found no merit in Defendant's arguments, his motion to dismiss the indictment (R. 25) is DENIED.

IT IS SO ORDERED.

Date: March 26, 2024

*s/ David A. Ruiz*
DAVID A. RUIZ
UNITED STATES DISTRICT JUDGE